RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16b0002p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

_____

In re:  MILDRED JOSEPHINE BRATT,

                  _Debtor._

Nos. 15-8009/8010

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee at Nashville.
No. 14-05344—Randal S. Mashburn, Bankruptcy Judge.

Argued:  March 1, 2016

Decided and Filed:  April 26, 2016

Before: DELK, OPPERMAN and WISE, Bankruptcy Appellate Judges.

_____

**COUNSEL**

**ARGUED:**  R. Alex Dickerson, DEPARTMENT OF LAW OF THE METROPOLITAN
GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Nashville, Tennessee, for
Appellant in 15-8009.  Gill R. Geldreich, OFFICE OF THE TENNESSEE ATTORNEY
GENERAL, Nashville, Tennessee, for Appellant in 15-8010.  Henry E. Hildebrand, III, OFFICE
OF THE CHAPTER 13 TRUSTEE, Nashville, Tennessee, for Appellee Trustee.  Alexander S.
Koval, ROTHSCHILD & AUSBROOKS, PLLC, Nashville, Tennessee, for Appellee Bratt.
**ON BRIEF:**  R. Alex Dickerson, DEPARTMENT OF LAW OF THE METROPOLITAN
GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Nashville, Tennessee, for
Appellant in 15-8009.  Gill R. Geldreich, OFFICE OF THE TENNESSEE ATTORNEY
GENERAL, Nashville, Tennessee, for Appellant in 15-8010.  Henry E. Hildebrand, III, OFFICE
OF THE CHAPTER 13 TRUSTEE, Nashville, Tennessee, for Appellee Trustee.  Mary Beth
Ausbrooks, ROTHSCHILD & AUSBROOKS, PLLC, Nashville, Tennessee, Thomas F. Bloom,
Nashville, Tennessee, for Appellee Bratt.

---

## OPINION

---

TRACEY N. WISE, Bankruptcy Appellate Panel Judge.  Metropolitan Government of Nashville & Davidson County ("Metro") objected to a chapter 13 plan which proposed to pay 12% interest on a delinquent tax debt, asserting that, pursuant to newly amended Tennessee Code Annotated ("T.C.A.") § 67-5-2010(d), the correct interest rate should be 18%.  The bankruptcy court found that T.C.A. § 67-5-2010(d) violates the Supremacy Clause of the United States Constitution, determining that it imposes a penalty on bankruptcy debtors in violation of the mandates of the Bankruptcy Code.  Metro and the State of Tennessee, as an intervenor, each timely filed an appeal.  For the reasons stated below, the Panel finds that T.C.A. § 67-5-2010(d) is not applicable to determine the interest rate pursuant to 11 U.S.C. § 511.  Thus, the Panel does not reach the question of whether T.C.A. § 67-5-2010(d) is constitutional.  The bankruptcy court's decision that the appropriate interest rate is 12% is AFFIRMED on other grounds.

### I.  ISSUE ON APPEAL

Appellants' stated issue on appeal is whether the bankruptcy court erred in holding that T.C.A. § 67-5-2010(d) is invalid under the Supremacy Clause of the United States Constitution. For the reasons stated below, the Panel does not reach this issue.  The sole determinative issue on appeal is whether, pursuant to 11 U.S.C. § 511, the interest rate applicable to Debtor's delinquent tax debt is determined under T.C.A. § 67-5-2010(d).

### II.  JURISDICTION AND STANDARD OF REVIEW

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court.  For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (quotation marks and citation omitted).

None of the parties have challenged the Bankruptcy Appellate Panel's jurisdiction to hear this appeal. However, the unusual posture of the appeal is worth noting. The parties appeal from an opinion entered on February 26, 2015 (the "Opinion"). There is no order associated directly with the Opinion, but it relates back to the Order Confirming Chapter 13 Plan. ("Confirmation Order," Bankr. No. 14-5344, ECF No. 47.) An order confirming a chapter 13 plan is typically a final order for purposes of appeal. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269, 130 S. Ct. 1367, 1376 (2010). The tax interest rate issue raised in this appeal was initially raised as an objection to confirmation of the chapter 13 plan. The parties, however, agreed to plan confirmation with the interest rate issue reserved pending further briefing and hearing. Following oral argument, the bankruptcy court issued the Opinion, which held T.C.A. § 67-5-2010(d) unconstitutional as a violation of the Supremacy Clause. The Confirmation Order was not final until the interest rate issue was resolved by the Opinion. Therefore, the Opinion ended the litigation on the merits and left nothing for the court to do regarding plan confirmation. Accordingly, the Panel has jurisdiction to hear this appeal.

A bankruptcy court's decision that relies on or interprets state law and the Bankruptcy Code is reviewed de novo." *Richardson v. Schafer (In re Schafer)*, 455 B.R. 590, 592 (B.A.P. 6th Cir. 2011)(citing *Menninger v. Schramm (In re Schramm)*, 431 B.R. 397, 399 (B.A.P. 6th Cir. 2010) (*rev'd on other grounds*)). See also *Lebovitz v. Hagemeyer (In re Lebovitz)*, 360 B.R. 612 (B.A.P. 6th Cir. 2007) (reviewing bankruptcy court's interpretation of state's exemption statute de novo because it involves a question of law). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citation omitted).

### III. FACTS

Mildred Josephine Bratt ("Debtor") filed a chapter 13 bankruptcy petition on July 3, 2014. Debtor listed a debt owed to Metro for delinquent property taxes. The debt is secured by a lien. All parties agree that Metro's claim is "oversecured." Thus, 11 U.S.C. § 506(b), which authorizes interest to be paid on oversecured claims, is applicable to Metro's claim.

Debtor's chapter 13 plan proposed to pay 12% interest on the tax debt. Debtor asserted that the interest rate is determined by T.C.A. § 67-5-2010(a)(1) ("Subsection (a)(1)") which provides:

> (a)(1) To the amount of tax due and payable, a penalty of one-half of one percent (0.5%) and interest of one percent (1%) shall be added on March 1, following the tax due date and on the first day of each succeeding month, except as otherwise provided in regard to municipal taxes. . . .

Tenn. Code Ann. § 67-5-2010(a)(1). Metro objected to plan confirmation asserting that the proper interest rate under Tennessee law is 18%. Metro cited a newly revised subsection of Tennessee Code § 67-5-2010 which provides:

> (d) **For purposes of any claim in a bankruptcy proceeding** pertaining to delinquent property taxes, the assessment of penalties determined pursuant to this section constitutes the assessment of interest.

Tenn. Code Ann. § 67-5-2010(d) (emphasis added) (effective July 1, 2014) ("Subsection (d)"). The Tennessee legislature adopted Subsection (d) in response to the bankruptcy court's prior decision in *In re Gift*, 469 B.R. 800 (Bankr. M.D. Tenn. 2012). In *Gift*, the bankruptcy court held that the 6% annual penalty provided for by Subsection (a)(1) was not allowed under 11 U.S.C. § 506(b).

The bankruptcy court in the case at bar agreed with Debtor's assertion that the annual interest rate should be 12%, holding that Subsection (d) directly conflicts with the

> express language of these bankruptcy statutes and the clear intent reflected in the overall claims process [that] create a well-defined federal policy that post-petition penalties that might otherwise be owed to secured creditors are simply not paid in bankruptcy cases.

*In re Bratt*, 527 B.R. 303, 312 (Bankr. M.D. Tenn. 2015).

> The Tennessee statute [Subsection (d)] impermissibly conflicts with long-standing federal bankruptcy policy against the collection of penalties by an oversecured claimholder in at least two ways: (1) the Tennessee statutory amendment does not set a "rate of interest" as allowed by § 511, but instead directs the bankruptcy court to treat the state's penalty claim inconsistently with the Bankruptcy Code, and (2) the penalty, called interest by the statute, is clearly penal in nature.

*Id*. Thus, the bankruptcy court found Subsection (d) unconstitutional as a violation of the Supremacy Clause. Accordingly, the bankruptcy court held that the interest rate for the delinquent tax debt could not be determined from Subsection (d). Rather, the bankruptcy court found that the appropriate interest rate for the delinquent tax claim was 12% as provided for under Subsection (a)(1). Metro and the State of Tennessee, as intervenor, appealed. The Debtor, along with the Chapter 13 Trustee, Henry Hildebrand ("the Trustee"), filed briefs arguing that the correct interest rate should be 12%.

## IV. DISCUSSION

In this appeal, the Bankruptcy Appellate Panel must determine whether the correct interest rate on the delinquent tax debt is 12% pursuant to Subsection (a)(1), as determined by the bankruptcy court, or 18% pursuant to Subsection (d) as argued by Metro and the State of Tennessee. The Panel agrees with the bankruptcy court's result, but not its rationale.[1] For the reasons stated herein, the Panel declines to reach the question of whether Subsection (d) is constitutional, instead holding that it is simply not applicable to the facts of this case under 11 U.S.C. § 511's plain meaning.

Section 511 explains how the interest rate for tax claims is determined under the Bankruptcy Code. It provides:

> (a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under **applicable nonbankruptcy law**.

11 U.S.C. § 511 (emphasis added). This appeal turns on the meaning of the phrase "applicable nonbankruptcy law."

---

[1]See *Kraus Anderson Capital, Inc. v. Bradley* (*In re Bradley*), 507 B.R. 192, 201 (B.A.P. 6th Cir.), *appeal dismissed*, 588 F. App'x 480 (6th Cir. 2014) (internal quotation marks and citations omitted) ("[T]he bankruptcy court's decision ... may be affirmed on any grounds supported by the record."); *see also Buke, LLC v. Eastburg* (*In re Eastburg*), 447 B.R. 624, 632 (B.A.P. 10th Cir. 2011) (internal quotation marks and footnotes omitted) ("We are free to affirm ... on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the trial court. Further, we may affirm even where the lower court reached its conclusions from a different or even erroneous course of reasoning.")

The pivotal issue in this case is one of statutory construction. The language of the statute itself is the starting point in statutory interpretation. Unless they are otherwise defined, the words in a statute will be interpreted as taking their ordinary, contemporary, common meaning. When construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed accurately expresses its legislative purpose. If the statutory language is unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced.

*Deutsche Bank Nat'l Tr. Co. v. Tucker*, 621 F.3d 460, 462-63 (6th Cir. 2010) (internal quotation marks and citations omitted). See also *United States v. Plavcak*, 411 F.3d 655, 660-61 (6th Cir. 2005).

In this appeal, the Trustee argues that "the amendment to the Tennessee Code is directed specifically and exclusively to bankruptcy matters and, therefore, is not a nonbankruptcy law." (Br. of Appellee Henry E. Hildebrand, III, Ch. 13 Tr. at 2, BAP No. 15-8009 ECF No. 19). The Panel agrees. The bankruptcy court rejected the Trustee's argument, holding:

The plain, straightforward meaning of the statute is that governmental creditors are permitted to be paid on their bankruptcy claims based on the interest rate set by local, state, or federal law *outside* the Bankruptcy Code. The plain language reflects that the reference to "applicable nonbankruptcy law" is nothing more or less than a distinction between provisions of the Bankruptcy Code versus laws found elsewhere that govern interest rates on delinquent taxes.

*In re Bratt*, 527 B.R. 303, 308 (Bankr. M.D. Tenn. 2015) (emphasis in original). The Panel finds the bankruptcy court's definition of "nonbankruptcy law" too broad, and thus, its definition of "bankruptcy law" too narrow. The provisions of the Bankruptcy Code are clearly bankruptcy laws. However, this axiom does not require the conclusion that every law found outside of the Bankruptcy Code is a nonbankruptcy law.

In *Richardson v. Schafer* (*In re Schafer*), 689 F.3d 601, 606 (6th Cir. 2012), the Sixth Circuit considered whether Michigan's bankruptcy-specific exemption statute was constitutional. In *Schafer*, the bankruptcy trustee argued that it was not constitutional because "Michigan's bankruptcy–specific exemption statute is a 'bankruptcy law'" and only the federal government can enact bankruptcy laws. *Schafer*, 689 F.3d at 605. The Sixth Circuit rejected the argument that only the federal government can enact bankruptcy laws. A large portion of the *Schafer*

opinion reviews the appropriate circumstances under which states can create bankruptcy laws.  In holding the bankruptcy-specific exemption statute constitutional, the Sixth Circuit noted that under the precedents established by *Rhodes v. Stewart,* 705 F.2d 159 (6th Cir. 1983) and *Hood v. Tennessee Student Assistance Corp.*, 319 F.3d 755 (6th Cir. 2003), *aff'd on other grounds*, 541 U.S. 440, 124 S. Ct. 1905 (2004), "the states retain the power to act where the federal government has declined to do so (*Hood*) or where, as in the area of exemptions, it has decided to permit the states to act (*Rhodes*)."  *Schafer*, 689 F.3d at 606.  Thus, *Schafer* can be fairly read as holding that a state promulgated bankruptcy-specific statute is, in fact, a bankruptcy law.[2]

In *HSBC Bank USA v. Branch* (*In re Bank of New England Corp.*), 364 F.3d 355 (1st Cir. 2004), the First Circuit Court of Appeals looked at the phrase "applicable nonbankruptcy law" as used in Bankruptcy Code § 510, governing subordination clauses.  The First Circuit noted that:

> One thing seems very clear: in keeping with the principle that bankruptcy is an area of distinct federal competence, Congress has conferred on the federal courts the power to apply any and all generally applicable state rules of contract interpretation in construing subordination agreements.  But section 510(a) does not vest in the states any power to make bankruptcy-specific rules: the statute's clear directive for the use of applicable *nonbankruptcy* law leaves no room for state legislatures or state courts to create special rules pertaining strictly and solely to bankruptcy matters.

*HSBC Bank*, 364 F.3d at 364 (emphasis in original)(citations omitted).  The same principle applies to § 511.  Section 511 instructs bankruptcy courts to apply a generally applicable tax interest rate, but its clear directive for the use of applicable nonbankruptcy law leaves no room for the creation or application of a special tax interest rate pertaining strictly and solely to bankruptcy matters.[3]

---

[2]*Schafer* clearly demonstrates that the Bankruptcy Code's deferral to state and local law under certain circumstances does not automatically authorize a state to enact bankruptcy-specific legislation.  In fact, in *Schafer*, the Sixth Circuit acknowledged a difference between the exemption opt-out provision (§ 522(b)--permitting bankruptcy-specific exemption statutes) and instances in which the Bankruptcy Code only defers to generally applicable non bankruptcy-specific laws on a broader spectrum (§§ 346(b ), 506(b)).  *Schafer*, 689 F.3d at 608.

[3]Although not determinative, the bankruptcy court's determination that the phrase "applicable nonbankruptcy law" encompasses everything outside of the Bankruptcy Code, including state laws that are bankruptcy-specific, would turn the definition of "nonbankruptcy" on its head.  The phrase "applicable non-bankruptcy law" appears thirty-two times in the Bankruptcy Code.  *In re Morrell*, 394 B.R. 405, 416 (Bankr. N.D.

Simply stated, § 511's plain language requires bankruptcy courts to use an interest rate that is determined under nonbankruptcy law. Subsection (d) of the Tennessee statute is a bankruptcy law because it creates an interest rate that is only used in bankruptcy cases. Therefore, under § 511's plain meaning, Subsection (d) cannot be applied to determine the interest rate.

Due to the conclusion that Subsection (d) is not applicable to determine the tax interest rate under § 511, the Panel does not reach the question of whether T.C.A. § 67-5-2010(d) is constitutional. "Under the doctrine of constitutional avoidance, federal courts should avoid federal constitutional determinations when a case can be resolved on other grounds." *Toth v. Callaghan*, 995 F. Supp. 2d 774, 780 (E.D. Mich. 2014), *appeal dismissed*, (July 8, 2014) (citing *Siler v. Louisville & Nashville R.R. Co*., 213 U.S. 175, 193, 29 S. Ct. 451 (1909)).

> Supreme Court precedent makes it clear that courts should avoid unnecessary adjudication of constitutional issues. *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."). Where a statutory or nonconstitutional basis exists for reaching a decision, as it does here, it is not necessary to reach the constitutional issue. *See, e.g.*, *Montenegro v. United States*, 248 F.3d 585, 595-96 (7th Cir. 2001) (avoiding the question of the constitutionality of the statute of limitations of § 2255).

*Brown v. United States*, 20 F. App'x 373, 374 (6th Cir. 2001).

## V. CONCLUSION

The Panel holds that T.C.A. § 67-5-2010(d), a bankruptcy-specific statute, is a bankruptcy law. Therefore, Subsection (d) may not be used to determine the applicable tax interest rate pursuant to § 511. The bankruptcy court's determination that the applicable tax rate is 12% pursuant to T.C.A. § 67-5-2010(a)(1) is AFFIRMED.

---

W. Va. 2008). To hold that states are authorized to create a bankruptcy-specific law every time the phrase "applicable nonbankruptcy law" is used would fly in the face of *Schafer*'s admonition.